IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03010-M-RJ

| | |
|---|---|
| SHARIF HAKIM MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BRIAN GRAY, et al., ) | |
| ) | |
| Defendants. ) | |

This cause is before the court on defendants' pending motion for summary judgment, Mot. [D.E. 26]. For the reasons discussed below, the court grants this motion.

Relevant Procedural History:

On January 12, 2023, Sharif Hakim Moore ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7].

Plaintiff generally alleges that, from June to August 2021, unrepaired overflowing toilets at the Craven County Detention Center ("CCDC") led to unsanitary conditions of confinement that violated his due process rights as a pretrial detainee. See Compl. [D.E. 1]. Plaintiff seeks money damages and names as defendants Sheriff Chip Hughes and Officers Mr. Gray and Mr. Chad. Id.

On June 16, 2023, the court conducted its initial review, allowed the action to proceed against the officer defendants as to the alleged sanitary conditions of plaintiff's cell, but dismissed all other claims, dismissed Sheriff Hughes as a defendant, and dismissed plaintiff's request for injunctive relief because he was no longer incarcerated at the CCDC. See Order [D.E. 10].

On August 7, 2023, the CCDC officers, properly identified as Brian Gray ("Gray") and Chad Smith ("Smith") (collectively, "defendants"), answered the complaint. Answer [D.E. 21].

On January 26, 2024, defendants filed a motion for summary judgment, Mot. [D.E. 26], a statement of material facts [D.E. 27], an appendix [D.E. 28], and a memorandum [D.E. 29].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 30], but he failed to respond and the time to do so has passed.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Defendants argue, *inter alia*, that plaintiff failed to exhaust his available administrative remedies at the CCDC before filing this action. See Defs.' Mem. [D.E. 29] at 7–11.

2

The Prison Litigation Reform Act ("PLRA") provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation, alteration, and internal quotation marks omitted); see Booth v. Churner, 532 U.S. 731, 741 (2001) (noting the PLRA requires exhaustion of administrative remedies "regardless of the relief offered through administrative procedures.").

Although "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are," Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted), administrative exhaustion is mandatory only if the grievance procedure is "available," Ross v. Blake, 578 U.S. 632, 642–44 (2016) (providing that grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (citations omitted)).

3

Failure to exhaust available administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

Here, plaintiff acknowledges on the face of the complaint that he neither filed a grievance as to the facts alleged nor completed the CCDC grievance process. See Compl. [D.E. 1] at 8.

Smith declares, *inter alia*: he has been the Chief Detention Officer at the CCDC since July 2021 and previously was the Assistant Chief Detention Officer; he is familiar with CCDC policies, practices, and customs; when they arrive at the CCDC, inmates receive a copy of the Inmate Handbook, including the Grievance Procedures; the CCDC had a grievance policy in place at all times relevant to this action; during Smith's employment, the CCDC and its staff always followed the Grievance Procedures; inmates can file grievance at a wall-mounted kiosk; all detention administrative staff can read and respond to inmate grievances; filed grievances are added to the inmate's file according to inmate number; all properly filed grievances, including resolved grievances, are in the inmate file; plaintiff's complaint admits he did not exhaust CCDC grievance procedures as to his claims; maintenance records show plaintiff's toilet was broken and repaired five times between June and August 2021; every time plaintiff reported a concern with his toilet, it was marked as a "high" or "critical" maintenance priority; plaintiff's complaint admits that he never filed any grievances related to toilet or sanitation issues; plaintiff only filed two grievances, one requesting a "copy of all [his] "grievances and inquiries [sic]," and the other stating, "I would like to purchase or rent a tablet." See Defs.' App., Ex. F, Smith Decl., [D.E. 28-6].

Gray declares, *inter alia*: he was a CCDC Corporal Day Shift Supervisor at all relevant times; he is familiar with CCDC policies, practices, and customs; all inmate living units were

4

inspected daily; pursuant to policy, Gray did daily sanitation inspections; it is common for inmates to flood their cell by damaging the sprinklers, toilets, or sinks; when grievances as to cell flooding are filed, the maintenance request is marked as "High" or "Critical" priority; the CCDC on-site maintenance team can complete most repairs during business hours and an outside specialist is contacted when necessary; CCDC inmates receive a copy of the Inmate Handbook which includes the Grievance Procedures; the CCDC had a grievance policy in place at all relevant times; during Gray's employment, CCDC staff always followed the Grievance Procedures; inmates can file grievances at a wall-mounted kiosk; all detention administrative staff can read and respond to grievances; grievances are added to the inmate's file according to inmate number; all properly filed grievances, including resolved grievances, are in the inmate file; plaintiff's complaint admits he did not exhaust CCDC grievance procedures as to his claims; plaintiff did not bring cell sanitation concerns to Gray; no officer brought any concerns regarding plaintiff to Gray's attention; if plaintiff had brought cell sanitation concerns to Gray's attention, he would have inspected the area, requested that plaintiff file a grievance, and "taken any necessary steps to ensure the cell was safe and sanitary"; and "at no point during plaintiff's incarceration did [Gray] witness or hear of Plaintiff's cell being in unsafe or unsanitary order." Id., Ex. G, Gray Decl., [D.E. 28-7].

The record support defendants' declarations regarding the CCDC's facility environmental sanitation policy, housekeeping plan, and maintenance policy, see id., Gray Decl. Attach., Ex. A [D.E. 28-7] at 7–14, the priority of these toilet repair requests, id., Smith Decl. Attach., Ex. D, [D.E. 28–6] at 30–31, the general availability of a grievance procedure at the CCDC, see id., Ex. B, [D.E. 28-6] at 18, and that plaintiff's filed grievances do not address the sanitation-related conditions-of-confinement issues alleged in this complaint, see id., Ex. C [D.E. 28-6] at 26–29.

5

After considering the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendants have pleaded and proved that plaintiff failed to exhaust his administrative remedies at the CCDC before filing this action, see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but plaintiff fails to show that the CCDC grievance procedure was not "available," see Ross, 578 U.S. at 643–44; Moore, 517 F.3d at 725.

Thus, defendants have met their burden of demonstrating the absence of a genuine issue of material fact as to exhaustion, Celotex, 477 U.S. at 325, whereas plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Accordingly, defendants are entitled to summary judgment. Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85.

Additionally, because the court dismisses the instant action without prejudice, see Booth, 532 U.S. at 735; see also Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice" (emphasis original)), the court need not address defendants' other arguments in support of their motion for summary judgment.

## Conclusion:

For the reasons discussed above, the court: GRANTS defendants' motion for summary judgment [D.E. 26]; DISMISSES WITHOUT PREJUDICE the action due to plaintiff's failure to exhaust available administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED this 6th day of May, 2024.

RICHARD E. MYERS II
Chief United States District Judge